UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-21184-CIV-SCOLA/GOODMAN

DAVID BETANCOURT,

      Plaintiff,

v.

BUGGY TECHNOLOGIES INC.,
a Florida Corporation, and
ISABEL BERNEY, individually,

      Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFF'S
MOTION FOR A DEFAULT JUDGMENT[1]**

      In this six-count action brought under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201, *et seq.*, and the Florida Minimum Wage Act ("FMWA"), Fla. Stat. §448.110,

Plaintiff David Betancourt ("Plaintiff") filed a Motion for a Default Judgment against

Defendants Buggy Technologies Inc. ("Defendant Buggy") and Isabel Berney ("Defendant

Berney" and collectively "Defendants"). [ECF No. 30]. Senior United States District Judge

Robert N. Scola, Jr. referred Plaintiff's motion to the Undersigned for a Report and

---

[1]     Judge Scola denied Plaintiff's initial Motion for Default Judgment [ECF No. 15] because the Complaint failed "to allege the required connections between [ ] Defendants' business and Betancourt's work for [ ] Defendants, on the one hand, and interstate commerce, on the other." [ECF No. 19, p. 1]. Plaintiff has since filed an Amended Complaint and the instant motion. [ECF Nos. 21; 30].

Recommendations. [ECF No. 31]. The Undersigned reviewed the motion and other relevant portions of the record.[2] As explained below, the Undersigned **respectfully recommends** that Judge Scola **deny** Plaintiff's motion **without prejudice.**

## I.     Background

Plaintiff filed this action against Defendants under the FLSA and FMWA. [ECF No. 21]. Plaintiff's Complaint includes six counts: Count I (Violation of FLSA/Minimum Wages against Defendant Buggy); Count II (Violation of FLSA/Overtime against Defendant Buggy); Count III (Violation of FLSA/Minimum Wages against Defendant Berney); Count IV (Violation of FLSA/Overtime against Defendant Berney); Count V (Violation of FMWA against Defendant Buggy); and Count VI (Violation of FMWA against Defendant Berney). *Id.*

Plaintiff states that he used to work as a driver for Defendant Buggy, which is owned by Defendant Berney. *Id.* at ¶¶ 5, 16. He worked for Defendants from "on or about August 22, 2022 through December 9, 2022." *Id.* at ¶ 21. He alleges that Defendants failed to properly compensate him during his employment, such as taking improper deductions from his paycheck or simply not paying him. *Id.* at ¶¶ 25, 26.

After Plaintiff filed his Amended Complaint and Judge Scola reopened this case, Plaintiff filed his renewed motion for default judgment. [ECF Nos. 21; 27; 30]. He seeks the

---

[2]     Defendants did not file a response to Plaintiff's motion, and the time to do so has now expired.

entry of a default judgment, as well as damages, including attorney's fees and costs, against Defendants. [ECF No. 30].

## II.    Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the district court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008). "It is the general rule that default judgments are ordinarily disfavored because cases should be decided upon their merits whenever reasonably possible." *Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*, 922 F. Supp. 1534, 1536 (S.D. Fla. 1996).

A court may not enter a default final judgment based solely on the existence of a clerk's default. "Prior to entering a default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defendant, the defendant has been properly served, and the complaint adequately states a claim upon which relief may be granted." *Verdejo v. HP Inc.*, No. 21-20431-CIV, 2021 WL 5933727, at *12 (S.D. Fla. Nov. 8, 2021), *appeal dismissed*, No. 21-14267-JJ, 2022 WL 758024 (11th Cir. Jan. 20, 2022) (Scola, J.). A court is required to examine the allegations in the complaint to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th

Cir. 1975)).[3] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

If the facts in the complaint are sufficient to establish liability, then the Court must determine the appropriate amount of damages. *See Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). Where all the essential evidence is in the record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearing in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.").

### III.    Legal Analysis

#### A.    Jurisdiction

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (*citing Nishimatsu*, 515 F.2d at 1206.).

---

[3]    In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before the close of business on September 30, 1981 would become binding precedent in the Eleventh Circuit.

1.    <u>**Subject Matter Jurisdiction**</u>

Federal courts are courts of limited subject matter jurisdiction and must be vigilant in ensuring that they have jurisdiction over a case. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

Moreover, the Court always has jurisdiction to determine whether it has jurisdiction over a matter. *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

The Complaint alleges six counts. Four of the counts (Counts I–IV) are alleged FLSA violations and the remaining two counts (Counts V and VI) are FMWA violations. Here, Plaintiff states that this Court has jurisdiction pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1367. The Undersigned agrees because the majority of the Complaint arises "under the laws of the United States" -- specifically the FLSA. *See* 28 U.S.C. § 1331.

Because the FMWA claims arise out of the same controversy as the FLSA claims, the Court should exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367.

### 2. Personal Jurisdiction

In addition to subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

### a. Service of Process

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the

[defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Judge Scola required Plaintiff to submit "either (1) proof of service of [ ] his amended pleading once he has served [ ] Defendants or (2) a memorandum of law explaining why service of the amended pleading is not required." [ECF No. 22]. Plaintiff filed a legal memorandum in response. [ECF No. 25]. In it, he explained that his Amended Complaint "does not include any new claims for relief against Defendants and merely clarifies the allegations set forth in the original complaint." *Id*. at 3. He argues that under Federal Rule of Civil Procedure 5(a)(2),[4] he was not required to serve a copy of his Amended Complaint to Defendants but that he did so anyway. *Id*. Judge Scola agreed with Plaintiff, found that "service is not required," and consequently reopened the case. [ECF No. 27].

Florida courts have held that returns of service are presumptively valid "absent clear and convincing evidence presented to the contrary." *Ctr. for Individual Rights v. Chevaldina*, 16-20905-CIV, 2017 WL 3098790, at *4 (S.D. Fla. Feb. 21, 2017) (citing *Telf Corp. v. Gomez*, 671 So. 2d 818, 818 (Fla. 3d DCA 1996)). Under Fla. Stat. § 48.081(2) a "domestic corporation or registered foreign corporation may be served with process required or authorized by law by service on its registered agent designated by the corporation under chapter 607 or chapter 617, as applicable."

---

[4]     Rule 5(a)(2) states: "If a Party Fails to Appear. No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."

Here, prior to filing his Amended Complaint, Plaintiff personally served Defendant Berney with the Summons, Complaint, and exhibits. [ECF No. 8]. He also served her as Defendant Buggy's registered agent.[5] [ECF No. 7].

Therefore, Plaintiff properly served Defendants pursuant to both the Federal and Florida rules.

### b.    Amenability to Jurisdiction

Both Defendants are amenable to the jurisdiction of this Court because one is a domestic corporation with its principal place of business in Florida and the other is a Florida resident. *See Shropshire v. Towing & Auto Repair Mgmt. Corp*, No. 8:20-CV-1931-TPB-CPT, 2021 WL 2904907, at *2 (M.D. Fla. Apr. 23, 2021), *report and recommendation adopted*, No. 8:20-CV-1931-TPB-CPT, 2021 WL 2895741 (M.D. Fla. July 9, 2021) (finding that the court had jurisdiction over the corporate defendant because it was a Florida corporation with its principal place of business in Florida); *Subic Bay Marine Exploratorium, Inc. v. JV China, Inc.*, 257 So. 3d 1139, 1141 (Fla. 5th DCA 2018) ("Florida residents are subject to the general jurisdiction of Florida courts. Under Florida law, corporations are residents of their state of incorporation." (internal citation omitted)).

---

[5]     As of October 7, 2024, Defendant Berney is still listed as Defendant Buggy's registered agent. *See* Defendant Buggy's profile on the State of Florida's Division of Corporations website, https://search.sunbiz.org/Inquiry/corporationsearch/SearchResultDetail?inquiryty pe=EntityName&directionType=Initial&searchNameOrder=BUGGYTECHNOLOGIES%20 P200000334450&aggregateId=domp-p20000033445-ea3a1ea8-9ba9-46d2-8b4e 65debde4aedd&searchTerm=BUGGY%20TECHNOLOGIES%20INC&listNameOrder=BUG GYTECHNOLOGIES%20P200000334450. (last visited Oct. 7, 2024).

In sum, Plaintiff has demonstrated that this Court has both subject-matter and personal jurisdiction over Defendants.

**B.     Liability**

Pursuant to the provisions of Federal Rule of Civil Procedure 55, when a party against whom affirmative relief is sought has failed to plead or otherwise defend, as provided by the Federal Rules of Civil Procedure, such as Defendants in this action, a default shall be entered against that party. Because of the default, Defendants have admitted the well-pleaded allegations of the Complaint. *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005).

As noted earlier, a "[d]efault does not automatically warrant the entry of [a] default judgment." *Oxebridge Quality Res. Int'l, LLC v. LaBelle*, No. 8:20-CV-2176-CEH-SPF, 2023 WL 3227154, at *2 (M.D. Fla. May 3, 2023). Thus, the Undersigned must first determine whether there is a sufficient basis in the Complaint for a judgment to be entered. *See DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (internal citation omitted) ("A defendant's default does not in itself warrant the court entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered[.]"); *see also, Buchanan*, 820 F.2d at 361 (stating "liability is well-pled in the complaint, and is therefore established by the entry of default").

Plaintiff's Amended Complaint alleges that Defendants' practices violated both the FLSA and the FMWA. [ECF No. 21].

1. <u>**Liability Under the FLSA**</u>

Plaintiff asserts FLSA overtime and minimum wage violations against both Defendants. [ECF No. 21, pp. 5–10 (Counts I-IV)]. Pursuant to the FLSA, Plaintiff "may file suit directly against an employer that fails to pay him the statutory wage or may make a derivative claim against any person who[:] (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *See Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir.1986) (*citing Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983) (explaining that a person is derivatively liable if he is intimately involved in the day-to-day operations of an employer that would be directly liable under the FLSA)). Here, Defendant Buggy was Plaintiff's employer. Defendant Berney,[6] as Defendant Buggy's corporate officer and manager, acted on behalf of Defendant Buggy and consequently asserted control of Plaintiff's work conditions.

"[T]he requirements to state a claim of a[n] FLSA violation are quite straight forward." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008). "The FLSA requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. §§ 206(a), 207(a)).

---

[6]     Both his initial and subsequent motions for default judgment mistakenly state that "**Miguel A. Selva** [ ] is a Joint Employer of Plaintiff [u]nder the FLSA." [ECF Nos. 15, p. 5; 30, p. 6 (emphasis added)]. Miguel A. Silva is not involved in this action.

"[T]he FLSA prohibits an employee from working more than 40 hours a week unless that employee is compensated at 'a rate not less than one and one-half times the regular rate at which he is employed.'" *Perez v. Paul Newman Dazzling Detailing, Inc.*, No. 6:23-CV-1222-PGB-EJK, 2024 WL 3342215, at *2 (M.D. Fla. June 21, 2024), *report and recommendation adopted*, No. 6:23-CV-1222-PGB-EJK, 2024 WL 3757647 (M.D. Fla. July 10, 2024) (quoting 29 U.S.C. § 207(a)(2)). Any employer who violates the FLSA's minimum or overtime wage provisions is "liable to the employee . . . affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." *Id*. § 216(b).

To state a claim under the FLSA for unpaid wages, an employee must allege: "(1) an employment relationship; (2) that the employer or employee engaged in interstate commerce; and (3) that the employer failed to pay overtime compensation and/or minimum wages." *Ray v. Adams & Assocs., Inc.*, 599 F. Supp. 3d 1250, 1256 (S.D. Fla. 2022) (Bloom, J.) (citing *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)).

### a.    Employment Relationship

In his declaration and Amended Complaint, Plaintiff states that he "was employed by Defendants as a full-time driver from on or about August 22, 2022, until on or about December 9, 2022." [ECF Nos. 21, ¶ 5; 30-1, ¶ 3]. His "primary job duties" consisted of transporting children to and from school and running various errands on behalf of Defendants. [ECF Nos. 21, ¶ 21; 30-1, ¶ 4]. Defendants, by their default, admit Plaintiff's

well-pleaded allegations of fact, as set forth in the Amended Complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). Therefore, Plaintiff has sufficiently alleged the first element of an employment relationship between himself and Defendants.

### b.    Engaged in Interstate Commerce

To be "engaged in commerce" under the FLSA, Plaintiff "must be directly participating in the actual movement of persons or things in interstate commerce by: "(i) working for an instrumentality of interstate commerce, *e.g.*, transportation employee," or "(ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citations omitted).

There are two different types of coverage under the FLSA: enterprise and individual. Plaintiff's FLSA claims are based on enterprise coverage. This type of coverage involves an employee who was "employed in an enterprise engaged in commerce or in the production of goods for commerce." *Martinez v. Palace*, 414 F. App'x 243, 245 (11th Cir. 2011) (citing 29 U.S.C. §§ 206(a), 207(a)(1); *see also Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1265–66 (11th Cir. 2006)).

In the FLSA context, enterprise means "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose," and commerce means "trade, commerce, transportation, transmission,

12

or communication among the several States or between any State and any place outside thereof." *Nodell v. Nicky's Rest. Equpment LLC*, No. 0:22-CV-62164, 2023 WL 185480, at *4 (S.D. Fla. Jan. 13, 2023) (quoting 29 U.S.C. §§ 203(b);(r)(1)). An enterprise "engaged in commerce or in the production of goods for commerce" means that the enterprise (1) "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) has "annual gross volume of sales made or business done [of] not less than $500,000." *Id*. (quoting 29 U.S.C. § 203(s)(1)(A)).

In his Amended Complaint, Plaintiff described Defendant Buggy as a "private transportation company, servicing private and public schools in Miami and Broward." [ECF No. 21, ¶ 9]. He stated that he worked for Defendant Buggy as a driver and that it employs two or more individuals "who have regularly sold, handled, or otherwise worked on goods and/or material that have been moved in or produced for commerce." *Id*. at ¶¶ 5; 8. Plaintiff alleges that Defendant Buggy engaged in interstate commerce because:

> 10. At all relevant times, Buggy Technologies employs two or more individuals who engaged in making intrastate trips to pick up children to and from school using Defendants' vehicles.

> 11. Buggy Technologies, upon knowledge and belief, had two or more employees routinely use the "Telegram" phone application to communicate, calendar events, and plan their routes. This application transmits data and information that moves across state lines.

13

12. Buggy Technologies, upon knowledge and belief, had employees routinely use the "Buggy" phone application which had a global positioning system ("GPS"). The GPS application transmits data and information that move across state lines.

13. Buggy Technologies, upon knowledge and belief, had their employee drivers use Mercedes-Sprinter vehicles. These vehicles have been moved or produced for commerce across state lines to be driven in Florida.

14. The Mercedes-Sprinter vehicles, upon knowledge and belief, routinely required maintenance including but not limited to, the purchase of power steering fluid and coolant. These products have been moved or produced for commerce across state lines.

15. Buggy Technologies, upon knowledge and belief, has had gross revenue which exceeds $500,000 for each of the past three (3) years, and utilizes goods in the flow of commerce across state lines.

[ECF No. 21, ¶¶ 10–15].

Plaintiff's Amended Complaint sufficiently alleges enterprise coverage and engaging in interstate commerce under the FLSA because he stated the nature of his work (driver), the nature of Defendants' business (transportation company), and provided straightforward allegations tying that work to interstate commerce. *See Kinne v. IMED Health Prods., LLC*, No. 18-62183-CIV, 2019 WL 2866787, at *3 (S.D. Fla. July 3, 2019) ("[T]o properly allege individual or enterprise coverage, an FLSA plaintiff need not do much. Aside from stating the nature of his work and the nature of his employer's business, he must provide only straightforward allegations connecting that work to interstate commerce."); *Nodell*, 2023 WL 185480, at *4 (collecting cases).

### c.     Failure to Pay Overtime or Minimum Wage

The Amended Complaint states that Plaintiff regularly worked between 50–65 hours per week for Defendants, and that he "was to receive a salary of $700.00 per week regardless of the hours worked." [ECF No. 21, ¶ 24]. "However, during his employment, Defendants would make improper deductions from Plaintiff's paycheck. As a result of this practice, there were times when Defendants failed to compensate Plaintiff at a rate higher or equal to Florida and federal minimum wage." *Id.* at ¶ 25. He additionally contends that Defendants did not compensate him for any work performed between November 21, 2022 and December 9, 2022. [ECF Nos. 21, ¶ 5; 30-1, ¶ 7]. He estimates that Defendants owe him $5,132.00[7] in unpaid overtime and minimum wages. [ECF No. 30-1, ¶ 9].

Accepting these allegations as true and admitted, Plaintiff has sufficiently demonstrated that Defendants failed to pay him minimum wages and overtime compensation.

### d.     Conclusion on FLSA Liability

Plaintiff's Amended Complaint sufficiently meets the requirements for establishing an FLSA claim for overtime compensation and minimum wage. Pursuant to his Amended Complaint and declaration: (1) Defendants hired him to work as a driver; (2) he worked

---

[7]     He alleges that Defendants owe him: $2,145.00 in unpaid minimum wages for work performed from November 21 and December 9, 2022; $805.00 in unpaid minimum wages for work performed from October 1 through November 20, 2022; and $2,182.00 in unpaid overtime wages. [ECF No. 30-1, ¶¶ 7–9].

more than 40 hours a week for Defendants; (3) Defendants did not compensate him appropriately under the FLSA because they either did not pay him or did not pay him enough; and (4) Defendants are an enterprise engaged in interstate commerce. Therefore, he established Defendants' liability under Counts I through IV.

### 2.     Liability Under the FMWA[8]

Counts V and VI allege that each Defendant violated the FMWA. [ECF No. 21, pp. 11–13]. Under the Florida Constitution, "Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida." *RUTH RAMOS LOBO, et al., Plaintiffs, v. EC FLORAL DESIGN & EVENTS LLC, et al., Defendants. Additional Party Names: Arianna Hechavarria Avila, Eleazar Castellanos, Elianis Torres Marrero*, No. 23-CV-23373, 2024 WL 4290724, at *2 (S.D. Fla. Mar. 14, 2024) (quoting Fla. Const. Art. X, § 24). The FMWA requires employers to pay eligible employees an hourly minimum wage. Fla. Stat. § 448.110.

Section 448.110(6)(a) mandates that Plaintiff must first provide Defendants with written notice of his FMWA claims. This notice "must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice." Fla. Stat. § 448.110(6)(a). The statute provided Defendants with "15 calendar

---

[8] The Undersigned notes that Plaintiff's motion fails to discuss the elements associated with FMWA claims. "A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012). However, the Undersigned will use my discretion and still address Defendants' liability under these two counts.

days after receipt of the notice to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved." *Id*. If Defendants either failed to pay or resolve the claims to Plaintiff's satisfaction, then Plaintiff is entitled to bring suit under the FMWA. *Id*.

Here, Plaintiff's Amended Complaint states that he provided Defendants with written notice on January 31, 2023. [ECF No. 21, ¶¶ 71, 81]. Plaintiff waited more than the mandatory fifteen (15) days when he filed his initial Complaint on March, 24, 2023.[9] [ECF No. 1]. As previously stated, he sufficiently alleged Defendants' failure to pay him minimum and overtime wages under the FLSA. His FMWA allegations share the same factual basis as his FLSA allegations. Therefore, the Amended Complaint sufficiently alleges Defendants' FMWA liability because: (1) Plaintiff successfully alleged Defendants' failure to properly pay him; (2) he provided Defendants with sufficient written notice as required by the FMWA; and (3) Defendants failed to participate in this litigation and provide any evidence to rebut Plaintiff's allegations. *Lobo*, 2024 WL 4290724, at *3 (S.D. Fla. Mar. 14, 2024).

### C.     Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and*

---

[9]     Plaintiff filed his initial Complaint fifty-two (52) days after he provided Defendants with written notice.

*recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2688 at 58–59 (3d ed. 1998)).

Here, Plaintiff seeks statutory and liquidated damages. Pursuant to the FLSA, Defendants are liable to Plaintiff for "unpaid minimum wages, or [his] overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "[L]iquidated damages are mandatory absent a showing of good faith." *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (citing *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir.), *cert. denied*, 474 U.S. 902, 106 S. Ct. 228, 88 L. Ed. 2d 228 (1985)). Due to Defendants' default and consequent failure to make a showing of good faith, this Court must award Plaintiff liquidated damages. *Id*. However, as discussed below, Plaintiff is not entitled to the relief requested because of his failure to provide adequate support for the Court to make a ruling.

18

In his declaration, Plaintiff states that Defendants failed to appropriately compensate him for work he performed as their employee. He contends that Defendants paid him $700.00[10] on a weekly basis from August 22 through September 30, 2022; and that Defendants lowered his weekly pay to $600.00 from October 1 through November 20, 2022. [ECF No. 30-1, ¶ 6]. He concludes that Defendants owe him approximately $5,132.00 in unpaid minimum and overtime wages. *Id*. at ¶ 10. However, the way he reaches that conclusion is unsupported. For example, he states that Defendants owe him about $2,145.00 in unpaid minimum wages for work performed between November 21 and December 9, 2022. But he fails to include how many hours he worked and how he knows he worked that many hours. This same issue plagues his other calculations.[11]

Without knowing how he reached his calculations, how many hours he worked, and whether that number is accurate (*i.e.*, supported by evidence), the Undersigned is unable to calculate how much Defendants appropriately owe him.

---

[10]     In his Amended Complaint, Plaintiff alleges that he "was to receive a salary of $700.00 per week regardless of the hours worked." [ECF No. 21, ¶ 24]. But he does not include *why* he had that understanding (*i.e.*, because of a written agreement, language in an email, paystubs, etc.).

[11]     Another example is his claim that Defendants owe him about $805.00 in unpaid minimum wages for work completed between October 1 through November 20, 2022. [ECF No. 31, ¶ 8]. However, he does not explain how he reached that amount, how many hours he worked, and whether the $600.00 he was paid was taken into account.

**D.    Judge Scola's Default Procedure Order**

After he reopened the case, Judge Scola entered a Second Order on Default Judgment Procedure. [ECF No. 28]. That Order **required** Plaintiff to either state "that there are no allegations of joint and several liability, and set forth the basis why there is no possibility of inconsistent liability[;]" or "file a *Notice of Joint Liability*." [ECF No. 28, pp. 1–2 (emphasis in original)]. Plaintiff did neither. The Order states that "Plaintiff's failure to file for a *Motion for Default Judgment* or *Notice of Joint Liability* within the specified time will result in a **dismissal without prejudice** as to these Defendants." *Id*. at 2 (emphasis in original). While he did timely file his motion for default judgment, it did *not* include the information Judge Scola required of him.

**IV.    Conclusion**

For the reasons discussed above, the Undersigned **respectfully recommends** that Judge Scola **deny without prejudice** Plaintiff's Motion for Default Judgment and allow Plaintiff an opportunity to amend his motion and rectify the deficiencies mentioned above.[12]

---

[12]    Plaintiff's current motion includes a request for the Court to retain jurisdiction to determine the appropriate attorney's fees and costs. The Undersigned anticipates that Plaintiff will file a future request seeking the same relief. However, this future request should not include any time dedicated to correcting counsel's mistakes. *See Brown v. Lawn Enf't Agency, Inc*., 369 F. Supp. 3d 1224, 1227 (N.D. Fla. 2019) (reducing requested fee award for time spend preparing an amended complaint due to the deficiencies in the initial complaint) (citing *Mobley v. Apfel*, 104 F. Supp. 2d 1357, 1360 (M.D. Fla. 2000) ("[T]ime devoted to correcting one's own errors should not be reimbursable.")).

## V.     Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on October 8, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record