United States District Court
for the
Southern District of Florida

| | |
|---|---|
| David Betancourt, Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 23-21184-Civ-Scola |
| ) | |
| Buggy Technologies Inc and Isabel ) | |
| Berney, Defendants. ) | |

## Omnibus Order

Previously, the Court referred Plaintiff David Betancourt's two motions for default judgment (Pl.'s Mots., ECF Nos. 15, 30) to United States Magistrate Judge Jonathan Goodman for a report and recommendations. (Court's Ref., ECF Nos. 16, 31.) Judge Goodman issued a report, recommending that the Court deny Betancourt's first motion, without prejudice (1st Rep. & Rec., ECF No. 18), which the Court adopted, after no objections were filed. (ECF No. 19.) In adopting that report and its recommendations, the Court ordered Betancourt to file an amended complaint, to address the deficiencies Judge Goodman identified. (*Id.*) Following that order, Betancourt amended his complaint and then moved for default judgment again. (Am. Compl., ECF No. 21; Pl.'s 2nd Mot. for Def. J., ECF No. 30.) Judge Goodman has reviewed that motion and recommends that it also be denied, without prejudice, based on various defects. (2nd Rep. & Rec., ECF No. 32.) In the meantime, Betancourt has filed yet another motion for default judgment (his third attempt). (Pl.'s Am. Mot. for Def. J., ECF No. 33.) No objections have been lodged against Judge Goodman's second report nor has any opposition been filed to Betancourt's amended motion for default judgment and the time to do either has passed. After review, the Court **adopts** Judge Goodman's second report and recommendation (**ECF No. 32**), thus **denying, without prejudice**, Betancourt's second motion for default judgment (**ECF No. 30**). At the same time, the Court **grants in large part and denies in small part** Betancourt's third motion for default judgment (**ECF No. 33**).[*]

Despite the lack of objections, the Court has nonetheless made a de novo review of Judge Goodman's recommendations. After careful consideration of his report, the record, and the relevant legal authorities, the Court agrees with the entirety of Judge Goodman's findings and conclusions: although Betancourt succeeded in establishing the Defendants' liability, he failed to supply adequate

---

[*] Both Defendants have defaulted and so there is no possibility of inconsistent liability between the Defendants in this case.

support for the Court to determine the amount of damages he is entitled to. The Court therefore affirms and adopts Judge Goodman report and recommendation that Betancourt's second motion for default judgment be denied without prejudice.

In response to the deficiencies identified by Judge Goodman, Betancourt has since filed an amended motion for default judgment. (Pl.'s Am. Mot., ECF No. 33.) Having previously established the Defendants' liability under the Fair Labor Standards Act and the Florida Minimum Wage Act, Betancourt has now adequately supported his entitlement to statutory and liquidated damages as well as some of his claimed attorney's fees and costs.

### 1. Damages

"Once a plaintiff has established a sufficient basis for liability," where the Defendants have defaulted, "the [c]ourt must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022) (Damian, Mag. J.), *rep. & recs. adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022) (Gayles, J.). "[W]here the record adequately supports an award of damages, an evidentiary hearing is not required." *Id.* An employer who violates the FLSA is liable to the employee affected in the amount of his unpaid wages "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA additionally authorizes an award of attorney's fees to the prevailing plaintiff in a proceeding to enforce its wage provisions. *Id.*

As to Betancourt's claims for minimum-wage and overtime damages, he has set forth, through his amended motion and its accompanying revised sworn declaration (Pl.'s Decl., ECF No. 33-1), a "legitimate basis" from which the Court can infer "a reasonable estimate of damages." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1385–86 (11th Cir. 2024). Betancourt worked for the Defendants, as a driver, from about August 22 to December 9, 2022. (Pl.'s Am. Mot. at 9; Pl.'s Decl. ¶ 3.) During the first six weeks of his employment (until about September 30, 2022), the Defendants paid Betancourt $700 per work week. (Pl.'s Am. Mot. at 9; Pl.'s Decl. ¶ 6.) Then, although his hours remained the same, Betancourt's weekly salary was reduced to $600 from October 1 through November 20, 2022. (Pl.'s Am. Mot. at 9; Pl.'s Decl. ¶ 7.) After November 20, however, until his last day, on December 9, Betancourt says he was not compensated at all. (Pl.'s Am. Mot. at 9; Pl.'s Decl. ¶ 8.b.)

While Betancourt recounts his compensation with precision, he is less exact as to the hours he worked. On the one hand, he describes "regularly work[ing] *up to . . .* 65[] hours per workweek" but then also says he "regularly worked 13-hour days, Monday through Friday." (Pl.'s Decl. ¶ 5 (emphasis

added).) While providing he worked "up to" 65 hours a week is not particularly helpful, recounting that he regularly worked thirteen hours, five days a week, is more informative. The Court finds this sufficient, in this case, to establish, though barely, that Betancourt worked 65 hours a week for the Defendants. *Schmitt v. Courtesy Prof. Sec., Inc.*, No. 618CV493ORL37TBS, 2018 WL 5268755, at *2 n. 2 (M.D. Fla. Aug. 22, 2018), *rep. & recs. adopted*, No. 618CV493ORL37TBS, 2018 WL 5263458 (M.D. Fla. Oct. 23, 2018) ("Plaintiff['s] use of estimates to arrive at his damage calculation is acceptable in the FLSA context where the employer does not maintain or produce accurate time records, as alleged here."). Based on that figure, the Court agrees with Betancourt's calculations as follows.

As for Betancourt's minimum-wage claims, during the time he was compensated only $600 a week, he was not paid at least the minimum wage of $11 an hour ($600 divided by 65 hours = $9.23). Accordingly, for that period, of eight weeks, the Defendants owe him an additional $1.77 an hour for each hour he worked ($11 minus $9.23 = $1.77). This amounts to $940.20 ($1.77 multiplied by 65 hours multiplied by 8 weeks). Additionally, the Defendants failed to compensate Betancourt at all for the eleven days he worked between November 21 and December 9, 2022. Accordingly, he is owed an additional minimum wage compensation of $1,573 for that period ($11 multiplied by 13 hours multiplied by 11 days = $1573). In sum, the total the Defendants owe Betancourt for his unpaid minimum wages is <u>$2,493.40</u>.

Turning to Betancourt's overtime-wage claims, Betancourt was not paid the time and a half he was due for the twenty-five hours he worked in excess of forty hours each week. For the six weeks during which the Defendants paid Betancourt $700 per week, this amounts to $807 (half of $10.76/hour multiplied by 25 hours multiplied by six weeks = $807.) For the remaining ten weeks, this amounts to $1,375 (half of $11.00/hour multiplied by 25 hours multiplied by ten weeks = $1375). In sum, then, the Defendants owe Betancourt <u>$2,182.00</u> for unpaid overtime. This amounts to a total award of **$4,675.40** in wage damages.

As already found by Judge Goodman, due to the Defendants' default and consequent failure to make a showing of good faith, the Court must also award Betancourt liquidated damages, in an amount equal to the total wage awards calculated above: **$4,675.40** ($2,493.40 in unpaid minimum wages plus $2,182.00 in unpaid overtime = $4,675.40).

### 2. Fees and Costs

Betancourt also seeks an award of his attorney's fees and costs. The FLSA mandates that in any action brought by an employee to enforce section

206 or 207 of the Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. 216(b). To determine the amount of fees due, courts use the lodestar approach and multiply the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983). When considering what constitutes a reasonable hourly rate, the court may consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717-19 (5th Cir. 1974).

Betancourt seeks to apply a rate of $350 per hour for the work of his counsel, Nathaly Saavedra, who has been a labor and employment attorney for, he says, over eight years. Betancourt also proffers that Saavedra is "known in the South Florida legal community for performing respectably in labor and employment matters" and that she has been "approved for an hourly rate of $350." (Pl.'s Am. Mot. at 13.) While Betancourt does not specify, in his motion, the number of hours Saavedra seeks compensation for, he says he seeks an award of $4,761.50 in attorney's fees. (*Id.*)

Since a movant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," the Court ordinarily expects counsel to do more than simply argue, in conclusory fashion, that their rate and hours are reasonable. *Norman v. Hous. Auth. of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988). Here, Betancourt provides no evidence regarding the prevailing market rate for lawyers of comparable skill, experience, and reputation or any real information about Saavedra's credentials. Nor is there any information about who "approved" her $350 hourly rate. Based on this scant information, the straightforward nature of this ordinary FLSA action, the fact that the Defendants defaulted, and the Court's own knowledge of the hourly rates awarded for similar work, the Court finds the rate Saavedra seeks somewhat excessive. Indeed, other Courts in this district have reached similar conclusions, noting a general failure for this attorney to justify her hourly rate. *See, e.g., Porto-Lebron v. Peter's Plumbing, Inc.,* No. 22-20941-CIV, 2022 WL 16639052, at *4 (S.D. Fla. Oct. 19, 2022) (McAliley, Mag. J.) (concluding that an hourly rate of $310 for Saavedra would be excessive and recommending a

$250 rate instead), *rep. & recs. adopted*, No. 22-CIV-20941, 2022 WL 16635819 (S.D. Fla. Nov. 2, 2022) (Williams, J.); *see also Ramos v. Arba Constr. Inc.*, No. 20-25192-CIV, 2021 WL 4482659, at *2 (S.D. Fla. Aug. 25, 2021) (McAliley, Mag. J.) (same), *rep. & recs. adopted*, No. 20-25192-CV, 2021 WL 4480169 (S.D. Fla. Sept. 30, 2021) (Graham, J.). That said, the Court has found at least one case, fortunately for Saavedra, where she was recently awarded $325 an hour, in a default-judgment case, and so that previously approved hourly rate will be adopted here. *See Mikail v. 24/7 Glob. Sec., Inc.*, No. 1:22-CV-23450-KMM, 2024 WL 555142, at *2 (S.D. Fla. Jan. 24, 2024) (Louis, Mag. J.), *rep. & recs. adopted*, No. 1:22-CV-23450-KMM, 2024 WL 552153 (S.D. Fla. Feb. 12, 2024) (Moore, J.).

Next, the Court reviews the number of hours counsel claims to have expended in this litigation. First, however, the Court notes a discrepancy. In Betancourt's motion he does not specify the number of hours Saavedra expended and simply reports that the total fee award sought is $4,761.50. (Pl.'s Am. Mot. at 13.) The subtotal listed for Saavedra's fees within her timekeeper report, in contrast, is only $4,686.50. (Inv., ECF No. 33-2, 2.) Since the lower figure appears supported by the actual billing records, the Court assumes the higher figure, relayed in the motion, was in error. Dividing this lower figure by Saavedra's billed rate of $350, it appears Saavedra seeks to be compensated for about 13.4 hours of work in this case.

Next, the Court has reviewed Saavedra's time records and finds a handful of entries "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301. Among such entries are one hour spent reviewing a half-page order reopening this case; time spent on an amended complaint to address deficiencies in Betancourt's initial complaint; and extra time entries necessitated by counsel's various default-motion drafting insufficiencies. *Norman*, 836 F.2d at 1301. Based on these problematic entries, the Court applies an across-the-board reduction of 20% to the total hours Saavedra seeks compensation for. *See Valdes v. Kendall Healthcare Group, Ltd.*, No. 1:22-CV-22046-KMM, 2024 WL 4133869, at *7 (S.D. Fla. July 19, 2024) (Louis, Mag. J.) ("When a request for attorney's fees is unreasonably high, courts may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut."), *rep. & recs. adopted*, No. 1:22-CV-22046-KMM, 2024 WL 3811099 (S.D. Fla. Aug. 14, 2024) (Moore, J.).

Accordingly, on the record before it, the Court finds Betancourt entitled to a fee award of **$3,484** (13.4 hours reduced by 20% (which is 10.72 hours), multiplied by a rate of $325 hours = $3,484).

Finally, as to the 28 U.S.C. § 1920 costs Betancourt seeks, he is entitled to only **$532** of the $901.45 he requests. The Court's total is comprised of

$402 for the Clerk's filing fee; and $130 for service of process on the two Defendants by a private process server.

The $470 Betancourt seeks for service of the complaint on the two Defendants impermissibly exceeds the cost of having a U.S. Marshal effect service. *See U.S. E.E.O.C. v. W&O, Inc.,* 213 F.3d 600, 624 (11th Cir. 2000) ("[A] district court does not abuse its discretion in taxing private process server fees that do not exceed the statutory fees authorized in § 1921."). Since Betancourt fails to supply any justification for the overage, the Court limits his reimbursement to the $65 per hour, per Defendant, as allocated under 28 C.F.R. § 0.114(a)(3). Betancourt also includes a couple dozen entries that reflect mailing costs. None of these costs, however, are recoverable under § 1920.

### 3. Conclusion

In sum, the Court **adopts** Judge Goodman's second report and recommendation (**ECF No. 32**), thus **denying, without prejudice**, Betancourt's second motion for default judgment (**ECF No. 30**). At the same time, the Court **grants in large part and denies in small part** Betancourt's third motion for default judgment (**ECF No. 33**).

The Court grants final default judgment in Betancourt's favor, awarding him **$4,675.40** in wage damages plus **$4,675.40** in liquidated damages; **$3,484** in attorney's fees; and; **$532** in costs. A separate judgment will follow.

The Clerk is directed to **close** this case. Any other pending motions are **denied as moot**.

The Court also directs the Clerk to **mail** a copy of this order to the Defendants at the addresses indicated below.

**Done and ordered** in Miami, Florida, on December 6, 2024.

Robert N. Scola, Jr.
United States District Judge

*Copies via U.S. mail to:*
**Buggy Technologies Inc.**
c/o Isabel Berney, registered agent
64 SW 18 RD
Miami, FL 33130

**Isabel Berney**
64 SW 18 RD
Miami, FL 33130